
United States District Court
Southern District of Texas
**ENTERED**
January 07, 2016
David J. Bradley, Clerk
ENTERED
01/06/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: § § BROWN MEDICAL CENTER, INC., § § Debtor. § § § | | Case No. 13-36405 Chapter 11 |
| ELIZABETH M. GUFFY, § PLAN AGENT, § § Plaintiff § § v. § § DICK DEGUERIN D/B/A DEGUERIN § DICKSON HENNESSY & WARD § F/D/B/A DEGUERIN & DICKSON, § CATHERINE BAEN, BRIAN WICE, § KATHERINE SCARDINO, MORITZ § & ASSOCIATES, INC., CATHY E. § BENNETT & ASSOCIATES, INC., § CERTIFIED APPRAISERS, INC., § JOHN DOE, AND FCS PHOTOS, § § Defendants. § § | | Adversary No. 15-3228 **JURY DEMAND** |

**REPORT AND RECOMMENDATION TO THE UNITED STATES DISTRICT COURT RECOMMENDING: (1) THE WITHDRAWAL OF THE REFERENCE OF THIS ADVERSARY PROCEEDING; AND (2) THE REFERRAL BACK TO THIS BANKRUPTCY COURT FOR HANDLING PRETRIAL MATTERS**
[Adv. Doc. Nos. 19, 26, 34, 37, 38, 40, 41, 45 & 46]

I. INTRODUCTION REGARDING THE PARTIES TO THIS ADVERSARY PROCEEDING

In the above-referenced adversary proceeding (the "Adversary Proceeding"), the plaintiff, Elizabeth M. Guffy, who is the plan agent (the "Plan Agent") under the confirmed Chapter 11 plan of liquidation in the main case, has asserted claims against the following defendants: (1)

1

Dick DeGuerin d/b/a DeGuerin Dickson Hennessy & Ward f/d/b/a DeGuerin & Dickson ("DeGuerin"); (2) Catherine Baen; (3) Brian Wice; (4) Katherine Scardino; (5) Moritz & Associates, Inc.; (6) Cathy E. Bennett & Associates, Inc.; (7) Certified Appraisers, Inc.; (8) John Doe; and (9) FCS Photos. Specifically, the Plan Agent seeks to avoid certain payments in the total amount of at least $2.5 million made by Brown Medical Center, Inc. ("BMC") to or for the benefit of the defendants.[1] The Plan Agent brings these claims pursuant to 11 U.S.C. §§ 548 and 550(a).[2] Further, the Plan Agent, invoking § 544, brings these claims pursuant to sections 24.005 and 24.006 of the Texas Business and Commercial Code ("Tex. Bus. & Com. Code").[3] Of the nine defendants who have been named in the caption, only seven of them have been served (hereinafter, these seven defendants are collectively referred to as the "Defendants").[4]

The Defendants have demanded a jury trial. [Adv. Doc. Nos. 19, 25, 34, 36, 37, 40 & 45]. Six of the Defendants—DeGuerin, Katherine Scardino, Catherine Baen, Brian Wice, Cathy E. Bennett & Associates, Inc., and Moritz & Associates, Inc.—have moved to withdraw the reference of the Adversary Proceeding. [Adv. Doc. Nos. 19, 26, 34, 38, 41 & 46]. The one defendant who has requested a jury trial but has not actually filed a motion to withdraw the reference—Certified Appraisers, Inc.—supports the other defendants' requests to withdraw the reference.

The Plan Agent, in the first instance, opposes withdrawal of the reference; alternatively, if the reference is withdrawn, the Plan Agent requests that the District Court immediately refer

---

[1] The figure of $2.5 million is derived through a review of the Plan Agent's amended complaint, plus Exhibit A attached to this complaint. [Adv. Doc. Nos. 10 & 10-1].

[2] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.

[3] Sections 24.005 and 24.006, as set forth in the Tex. Bus. & Com. Code, may also be referred to as claims under the Texas Uniform Fraudulent Transfer Act (TUFTA).

[4] The Plan Agent has never served summons on John Doe and FCS Photos.

2

the Adversary Proceeding to the undersigned judge for adjudication of all pretrial matters. The Defendants oppose the Plan Agent's alternative request that the undersigned judge adjudicate all pretrial motions. For the reasons set forth below, this Court recommends that the reference be immediately withdrawn, but that the District Court then refer the Adversary Proceeding to the undersigned judge for adjudication of all pretrial matters, with the undersigned judge thereafter to notify the District Court when the dispute is ready to be tried.

## II. FACTUAL BACKGROUND OF DR. MICHAEL BROWN AND HIS COMPANY, BROWN MEDICAL CENTER, INC.

The late Dr. Michael Brown ("Dr. Brown") was a noted hand surgeon who practiced in Houston for several years. Over his career, he formed several corporations for the many hand surgical centers he established in other locations outside of Houston, including locations in other states. One of the companies that Dr. Brown established, and over which he had virtually complete control, was BMC.

The undersigned judge has presided over both Dr. Brown's individual bankruptcy case as well as BMC's bankruptcy case. From the many hearings that this Court has held in both Dr. Brown's individual case and BMC's corporate case, this Court has observed a substantially intertwined relationship between these two cases, particularly because Dr. Brown treated BMC's operating account—to use the Plan Agent's phrase—"as a personal piggybank." [Hr'g Tr. 29:5–6, Dec. 16, 2015]. Indeed, sometimes the converse was true, where Dr. Brown used his personal funds to pay the debts of BMC. Because of these circumstances, there have been overlapping claims in these two cases, which has necessarily caused the Plan Agent in BMC's Chapter 11 case and the trustee in Dr. Brown's Chapter 7 case to spend time analyzing these claims to fulfill their fiduciary duties.

3

### III. FACTUAL AND PROCEDURAL BACKGROUND OF THE ADVERSARY PROCEEDING AT BAR

1. On September 16, 2015, the Plan Agent filed her original complaint against DeGuerin, thereby initiating the Adversary Proceeding. [Adv. Doc. No. 1]. In her original complaint, the Plan Agent asserted fraudulent transfer claims based on 11 U.S.C. §§ 548 and 550(a), [*Id.* at ¶ 24–26], and Tex. Bus. & Com. Code §§ 24.005, 24.006 (the "TUFTA claims"), [*Id.* at ¶ 28–29].

2. On September 23, 2015, this Court issued its Comprehensive Scheduling, Pretrial, and Trial Order (the "Scheduling Order"). [Adv. Doc. No. 7].

3. On October 8, 2015, the Plan Agent filed her amended complaint in which she sued the other six parties who comprise the group defined as the Defendants (the "Amended Complaint"). [Adv. Doc. No. 10].

4. On October 21, 2015, Defendant DeGuerin filed his Motion to Withdraw the Reference. [Adv. Doc. No. 19].

5. On October 29, 2015, Defendant Katherine Scardino filed two motions: (a) her Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, or, in the Alternative, Rule 12(B)(E) Motion for a More Definite Statement Pursuant to Federal Rule of Bankruptcy Procedure 7012(B), [Adv. Doc. No. 25], and (b) her Motion to Withdraw the Reference, [Adv. Doc. No. 26].

6. On November 4, 2015, this Court held an initial status conference at which the attorney for the Plan Agent and the attorneys for the Defendants appeared. Based upon the discussion held on the record at this hearing, during which the Court learned that most, if not all of the defendants, would soon be filing motions to withdraw the reference, this Court decided to: (a) abate the Scheduling Order; (b) impose deadlines for filing the

motions to withdraw reference; (c) impose a deadline on the Plan Agent for filing responses to these motions; and (d) schedule a hearing on December 16, 2015 for all motions to withdraw the reference.

7. On November 11, 2015, the Plan Agent filed her Response to DeGuerin's Motion to Withdraw the Reference. [Adv. Doc. No. 31].

8. On November 12, 2015, this Court, knowing that it would be holding a hearing on the multiple motions to withdraw reference, entered an order abating the Scheduling Order. [Adv. Doc. No. 32].

9. On November 13, 2015, Defendant Catherine Baen filed her Motion to Dismiss for Failure to State a Claim, [Adv. Doc. No. 33], and her Motion to Withdraw the Reference, [Adv. Doc. No. 34].

10. On November 16, 2015, Defendant Certified Appraisers, Inc. filed its Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, or, in the Alternative, Rule 12(B)(E) Motion for a More Definite Statement Pursuant to Federal Rule of Bankruptcy Procedure 7012(B). [Adv. Doc. No. 36].

11. On November 17, 2015, Defendant Brian Wice filed his Demand for Jury Trial, [Adv. Doc. No. 37], his Motion for Withdrawal of the Reference, [Adv. Doc. No. 38], and his Motion to Dismiss, [Adv. Doc. No. 39].

12. Additionally, on November 17, 2015, Defendant Cathy E. Bennett & Associates, Inc. filed its Demand for Jury Trial, [Adv. Doc. No. 40], its Motion for Withdrawal of the Reference, [Adv. Doc. No. 41], and its Motion to Dismiss, [Adv. Doc. No. 42].

13. On November 18, 2015, the Plan Agent filed her Response to Katherine Scardino's Motion to Dismiss. [Adv. Doc. No. 43].

14. On November 20, 2015, Defendant Moritz & Associates, Inc. filed its Demand for Jury Trial, [Adv. Doc. No. 45], and its Motion to Withdraw the Reference, [Adv. Doc. No. 46].

15. On November 23, 2015, Defendant Moritz & Associates, Inc. filed its Motion to Dismiss the Plan Agent's First Amended Complaint for Failure to State a Cause of Action or, in the Alternative, for More Definite Statement. [Adv. Doc. No. 47].

16. On December 4, 2015, the Plan Agent filed her Response to Catherine Baen's Motion to Dismiss, [Adv. Doc. No. 48], and her Response to Certified Appraiser, Inc.'s Motion to Dismiss and Motion for More Definite Statement, [Adv. Doc. No. 49].

17. On December 8, 2015, the Plan Agent filed her Response to Brian Wice's Motion to Dismiss, [Adv. Doc. No. 50], and her Response to Cathy E. Bennett & Associates, Inc.'s Motion to Dismiss, [Adv. Doc. No. 51].

18. On December 11, 2015, the Plan Agent filed her Response to Motions to Withdraw the Reference, opposing the motions to withdraw the reference filed by Defendants Katherine Scardino, Catherine Baen, Brian Wice, Cathy E. Bennett & Associates, Inc., and Moritz & Associates, Inc. [Adv. Doc. No. 53].

19. On December 14, 2015, the Plan Agent filed her Response to Moritz & Associates, Inc.'s Motion to Dismiss. [Adv. Doc. No. 55].

20. On December 16, 2015, the Court held a hearing solely on the six pending motions to withdraw the reference and the Plan Agent's responses in opposition thereto (the "Hearing"). [*See* Adv. Doc. Nos. 19, 26, 31, 34, 38, 41, 46 & 53]. At the Hearing, the Plan Agent gave testimony in support of her opposition to the motions to withdraw reference; none of the parties requesting withdrawal of the reference called any witnesses

in support of their respective motions. The Court then heard closing arguments from all counsel, and took the matter under advisement. The Court now makes this report and recommendation to the District Court.

## IV. CONCLUSIONS OF LAW

### A. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order

The Court has jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

Venue is proper pursuant to 28 U.S.C. § 1409(a).

The Supreme Court's decision in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), recognized certain limitations on a bankruptcy court's authority to enter a final order. Here, however, there is no *Stern* concern because the undersigned judge is not entering a final order on the six pending motions to withdraw reference, but rather is only making a report and recommendation to the District Court to enter an order withdrawing the reference of the Adversary Proceeding and then referring all pretrial matters back to the undersigned judge.

### B. Legal Standard for Withdrawal of the Reference From the Bankruptcy Court

The District Court has discretion to "withdraw, in whole or in part, any case or proceeding . . . for cause shown." 28 U.S.C. § 157(d). In *Holland America Insurance Company v. Roy*, 777 F.2d 992 (5th Cir. 1985), the Fifth Circuit held that in determining whether a movant

has shown cause under 28 U.S.C. § 157(d) to withdraw the reference, a district court should consider the following issues: (1) whether the underlying lawsuit is a core or non-core proceeding; (2) whether promotion of uniformity in bankruptcy administration will be achieved; (3) whether forum shopping and confusion will be reduced; (4) whether there will be economical use of debtors' and creditors' resources; (5) whether the withdrawal of reference will expedite the bankruptcy process; and (6) whether a party has demanded a jury trial. *Id.* at 999; *see also Mirant Corp. v. Southern Co.*, 337 B.R. 107, 115 (N.D. Tex. 2006) (considering *Holland America* factors in determination of motion to withdraw reference).

### C. This Court Recommends that the District Court Withdraw the Reference and Then Refer all Pretrial Matters to the Undersigned Judge Until the Dispute is Ready to be Tried

A review of the six *Holland America* factors weighs, on balance, in favor of withdrawal of the reference by the District Court. For the reasons set forth below, this Court recommends that the District Court withdraw the reference of the Adversary Proceeding, but then refer all pretrial matters to the undersigned judge.

1. <u>Whether the Underlying Lawsuit is a Core or Non-Core Proceeding</u>

The Plan Agent has brought causes of action against the Defendants under §§ 548 and 550 to avoid and recover alleged fraudulent transfers. There is no question that claims based on these two provisions are statutorily defined core proceedings. 28 U.S.C. § 157(b)(2)(H); *see Johnson v. Williamson (In re British Am. Props. III, Ltd.)*, 369 B.R. 322, 326–27 (Bankr. S.D. Tex. 2007). Invoking § 544 of the Code, the Plan Agent also asserts state law claims for fraudulent transfers under sections 24.005 and 24.006 of the Tex. Bus. & Com. Code. Section 544—commonly referred to as the "strong arm statute"—authorizes a trustee to " 'avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an [allowable] unsecured claim.' " *In re IFS Fin. Corp.*, 669 F.3d 255, 261 (5th

8

Cir. 2012) (quoting 11 U.S.C. § 544(b)(1)). Stated differently, § 544 "allows a trustee in bankruptcy to step into the shoes of a creditor holding an unsecured claim and void transfers that are voidable under applicable state law." *In re Cyrus II P'ship*, 413 B.R. 609, 619 (Bankr. S.D. Tex. 2008). However, whether such claims constitute core claims or non-core claims is less clear, as evidenced by the fact that a "non-core proceeding" is not defined by statute and by the split among courts.

Many courts have concluded that while a claim may be rooted in state law (i.e., TUFTA claims), such claim becomes a federal claim under § 544 upon the commencement of a bankruptcy case, thereby invoking a substantive right under title 11 and constituting a core claim. *See, e.g.*, *In re Appalachian Fuels*, 472 B.R. 731, 739 (E.D. Ky. 2012) ("[R]egardless of whether the fraudulent transfer claims are brought under § 548 or § 544, they are considered core claims."); *In re Ramirez*, 413 B.R. 621, 628 (Bankr. S.D. Tex. 2009) ("The TUFTA claim is an action to avoid the alleged fraudulent transfers, which is part of the illustrative list of core proceedings under § 157(b)(2) . . . [t]herefore, the TUFTA claim is core."); *In re Bliss Technologies, Inc.*, 307 B.R. 598, 600 (Bankr. E.D. Mich. 2004) (concluding that the plaintiff's cause of action based upon fraudulent transfer under state law and § 544(b)(1) is a core proceeding); *In re Ernie Haire Ford, Inc.*, 2012 WL 4356161, at *2 (M.D. Fla. Sept. 24, 2012) ("In addition to 'non-core' claims, this action includes at least one 'core' claim (fraudulent transfer under [§ 544(b)]).").

Some courts, on the other hand, have concluded that claims based upon state law (such as TUFTA claims) do not invoke substantive rights created by federal bankruptcy law and could exist outside of the bankruptcy context. *See, e.g., In re The Heritage Organization, L.L.C.*, 454 B.R. 353, 360–61 (Bankr. N.D. Tex. 2011) ("The claim under [TUFTA] does not invoke a right

9

created by title 11, and clearly exists outside of bankruptcy. Therefore, at most, it is a 'related to' claim under section 1334(b).").

Then, there are some courts that decline to make any determination on whether a state law claim brought pursuant to § 544 is core or non-core. *See, e.g., In re Extended Stay, Inc.*, 466 B.R. 188, 205 (S.D.N.Y. Nov. 10, 2011) ("Because the classification of these [state law] claims as core or non-core is not dispositive of the withdrawal motions, I will consider the remaining factors without deciding whether these claims are core or non-core."); *In re Fairfield Sentry Ltd.*, No. 10 Civ. 7340, 2010 WL 4910119, at *2 (S.D.N.Y. Nov. 22, 2010) (concluding that § 157(b)(3) requires that the bankruptcy court decide the issue of whether a claim is core or non-core and states that "[t]he Court [] moves to the other relevant factors without reaching a conclusion on [whether the claims are core or non-core], which is not singularly dispositive"); *In re Magnesium Corp. of America*, 2004 WL 1161172, at *1 n. 1 (S.D.N.Y. May 24, 2004) ("It suffices to note at this juncture that there are core claims and claims which appear on their face to be non-core claims. I need not finally determine whether the apparently non-core claims are, indeed, non-core claims at this juncture."); *Good v. Kvaerner U.S., Inc.*, 2003 WL 21755782, at *2 n. 6 (S.D. Ind. July 25, 2003) (analyzing only whether a claim is "related to" a case under title 11 and stating that "[w]e do not address whether this proceeding is core or non-core, because such an analysis is unnecessary to our ruling").

The Court is persuaded by those courts who have held that a fraudulent transfer claim under state law, even though brought pursuant to § 544, is nevertheless a "related to" proceeding, not a core proceeding. Indeed, although not in the context of an analysis regarding a motion to withdraw reference, the Fifth Circuit has stated that: "The district court treated [the debtor's] TUFTA claim as being 'related to' the bankruptcy rather than a core bankruptcy claim. *We*

10

*agree with this characterization." In re Galaz*, 765 F.3d 426, 431 (5th Cir. 2014) (emphasis added).

Thus, in the Adversary Proceeding, this Court concludes that the Plan Agent has brought both core claims and non-core claims. Where an adversary proceeding encompasses both core and non-core claims, courts have held that withdrawal of the reference is appropriate because it promotes judicial efficiency. *See Mirant Corp.*, 337 B.R. at 122; *see also In re Dallas Roadster, Ltd.*, No. 11-43725, 2013 WL 5758632, at *2 (Bankr. E.D. Tex. Sept. 27, 2013), *reported and recommendation adopted*, No. 11-43725, 2013 WL 5769916 (E.D. Tex. Oct. 21, 2013). Adjudicating all of the claims, both core and non-core, in the District Court eliminates the prospect of an appeal from the bankruptcy court's adjudications of core claims and dispenses with the need for the District Court to conduct a *de novo* review of proposed findings and conclusions of the bankruptcy court after a trial in the bankruptcy court as to the non-core claims. *See Mirant Corp.*, 337 B.R. at 122. "The creation of two sets of proceedings could create judicial inefficiency, which should be avoided. This weighs in favor of withdrawal *in whole*." *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 455 B.R. 869, 879 (E.D. La. 2011); *accord In re Tastee Donuts, Inc.*, 137 B.R. 204, 207 (E.D. La. 1992) (finding that even where an adversary proceeding involved both core and non-core matters, in the interests of judicial efficiency, the reference should be withdrawn for the entire adversary proceeding).

Because splitting the Plan Agent's core and non-core claims into two proceedings would be judicially inefficient, this first factor favors withdrawal of the reference.

  2. <u>Whether Promotion of Uniformity in Bankruptcy Administration will be Achieved</u>

"If a bankruptcy court is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy

administration." *In re British Am. Props. III, Ltd.*, 369 B.R. at 327; *see Palmer & Palmer, P.C. v. U.S. Trustee (In re Hargis)*, 146 B.R. 173, 176 (N.D. Tex. 1992); *Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.)*, 136 B.R. 59, 61 (S.D.N.Y. 1992). This Court has familiarized itself with the factual allegations in the Adversary Proceeding and has reviewed all of the pending pleadings—including the numerous motions to dismiss that have been filed and the Plan Agent's responses in opposition thereto. [*See* Findings of Fact Nos. 5, 9, 10, 11, 12, 13, 15, 16, 17 & 19]. These circumstances weigh against withdrawal of the reference.

Moreover, the Plan Agent gave credible and uncontroverted testimony at the Hearing that promotion of uniformity in bankruptcy administration will be achieved if the reference is not withdrawn. Specifically, she testified that the undersigned judge already has substantial knowledge about Dr. Brown and BMC. Indeed, the undersigned judge has become extremely familiar with what the Plan Agent has referred to in her testimony as the "byzantine nature of [] Dr. Brown's business affairs" with his 100% owned companies and numerous creditors.

The undersigned judge agrees with the Plan Agent's position. Indeed, the Plan Agent has filed 22 adversary proceedings to recover alleged fraudulent conveyances, and in Dr. Brown's individual bankruptcy, the trustee has filed 10 adversary proceedings to recover other alleged fraudulent conveyances. The undersigned judge has therefore already spent considerable time becoming familiar with all of the detail and background of how Dr. Brown and BMC made transfers to multiple individuals and corporations, including the numerous law firms who are the defendants in the Adversary Proceeding at bar.

Moreover, the undersigned judge has also spent considerable time adjudicating motions to compromise that have been filed in Dr. Brown's individual case, which in turn has added to the undersigned judge's knowledge about various pre-petition transfers that were made while Dr.

Brown was in control of his own financial affairs and the financial affairs of BMC. In fact, this Court recently refused to approve a compromise of an adversary proceeding in Dr. Brown's individual case because, after learning about the payments made by Dr. Brown for BMC under a lease agreement that he himself did not execute, this Court concluded that the compromise was not in the best interest of the estate; stated differently, this Court concluded that the trustee was settling for too little. [Main Case No. 13-35892, Doc. No. 2427]. The trustee subsequently negotiated a more favorable settlement for the estate, which this Court then approved. [*Id.*, Doc. No. 2447]. As with all of the matters relating to Dr. Brown or BMC, this Court has learned to constantly focus on asking just exactly who was making payment—Dr. Brown or BMC?—and just exactly who was receiving benefits because of the payment: Dr. Brown, BMC, or some third party? This Court has no doubt that in the Adversary Proceeding, which involves several law firms who received transfers of money, this Court's knowledge about the financial affairs of Dr. Brown and BMC will be of more than nominal assistance in evaluating issues raised in pretrial motions.

In sum, the undersigned judge is extremely familiar with many of the transfers orchestrated by Dr. Brown and BMC, and this knowledge has allowed, and will continue to allow, the undersigned judge to quickly and uniformly adjudicate all disputes in BMC's corporate case, as well as in Dr. Brown's individual case.

Under these circumstances, this second factor works against withdrawal of the reference.

3. Whether Forum Shopping and Confusion will be Reduced

The Plan Agent initiated the Adversary Proceeding before this Court. The Defendants have not participated in the main bankruptcy case—for example, none of the Defendants have ever filed a proof of claim. Indeed, the Defendants became involved in this bankruptcy only

13

when the Plan Agent brought the Adversary Proceeding. The Defendants have a good faith right to a jury trial in the District Court (*see* sixth factor below), and nothing in the record indicates that any of them are forum shopping. In fact, the Plan Agent agrees that the Defendants are not forum shopping. [Hr'g Tr. 113:16–19, Dec. 16, 2015]. Accordingly, the Defendants are not forum shopping by seeking a withdrawal of the reference, but are simply seeking to enforce their respective rights to a jury trial. *See In re British Am. Properties III, Ltd.*, 369 B.R. at 327 (determining that the defendant did not engage in forum shopping because the trustee brought the defendant into the bankruptcy proceeding and the defendant merely south to enforce its right to a jury trial). This factor therefore favors withdrawal of the reference.

4. Whether There Will be Economical Use of the Plan Agent's and Defendants' Resources

Bankruptcy aims to maximize the efficient use of resources to administer the debtor's estate and resolve related litigation. *Plan Adm'r v. Lone Star RV Sales, Inc. (In re Conseco Fin. Corp.)*, 324 B.R. 50, 55 (N.D. Ill. 2005). Here, the Plan Agent has given credible and uncontroverted testimony that she will spend less on attorneys' fees if the undersigned judge adjudicates the claims in the Adversary Proceeding. She believes this to be the case because of the undersigned judge's background and familiarity with the financial affairs of Dr. Brown and BMC—which will translate into this Court very quickly holding hearings on the pending motions to dismiss and issuing rulings expeditiously thereafter, and also handling any future pretrial matters quickly. This fourth factor therefore works against withdrawal of the reference.

5. Whether the Withdrawal of Reference Will Expedite the Bankruptcy Process

"A district court should consider the importance of the proceeding to the bankruptcy case and refuse to withdraw the reference if the withdrawal would unduly delay the administration of the bankruptcy case." *In re British Am. Props. III, Ltd.*, 369 B.R. at 328 (citing *In re Pruitt*, 910

14

F.2d 1160, 1168 (3d Cir. 1990)). At the Hearing, the Plan Agent credibly testified that withdrawal of the reference will not expedite the bankruptcy process. [Hr'g Tr. 32:3-14, Dec. 16, 2015]. Indeed, she expressed concern that there would be "considerable delay" if withdrawal of the reference did occur. [Hr'g Tr. 32:9, Dec. 16, 2015]. She further testified that she believes resolution of the disputes in the Adversary Proceeding can be achieved more quickly in this bankruptcy court because: (1) the undersigned judge has extensive knowledge of the main Chapter 11 case and its affiliated cases; (2) the undersigned judge has extensive knowledge of what the Plan Agent refers to as "byzantine nature of [] Dr. Brown's business affairs;" (3) the undersigned judge holds weekly hearings every Wednesday in the main cases, and adversary proceedings filed therein, in order to ensure that rulings are made timely so that distributions on allowed claims can be made as quickly as possible; and (4) the undersigned judge has already held multiple hearings in many of the 32 adversary proceedings involving fraudulent conveyances allegedly made by Dr. Brown and BMC. [Hr'g Tr. 29:15-30:13, Dec. 16, 2015]. In sum, the Plan Agent gave credible and uncontroverted testimony that withdrawal of the reference will not expedite the bankruptcy process, but rather could delay it insofar as she will not be able to make distributions to creditors as quickly as she desires.

Thus, this fifth factor weighs against withdrawal of the reference.

6. Whether a Party has Demanded a Jury Trial

"A party against whom legal action has been brought to recover monetary damages and who has never filed a claim against the estate is entitled to a jury trial under the constitutional mandates of the Seventh Amendment to the United States Constitution, notwithstanding Congress' characterization of the action as a core proceeding." *Nu Van Tech., Inc. v. Cottrell, Inc. (In re Nu Van Tech., Inc.)*, No. 01-49589-DML-11, 03-4219, 2003 WL 23785355, at *2

(N.D. Tex. Oct. 14, 2003). Here, the Plan Agent has sued the Defendants under §§ 548 and 550, and also under sections 24.005 and 24.006 of the Tex. Bus. & Com. Code, to avoid various transfers of funds made by BMC to the Defendants in the total amount of at least $2.5 million; however, none of the Defendants have filed proofs of claim in the main case. Thus, the Defendants are entitled to a jury trial under *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 64 (1989); the demands that each of the Defendants have made for a jury trial are wholly legitimate ones. Indeed, the Plan Agent does not dispute the assertions by the Defendants that each of them is entitled to a jury trial. [Adv. Doc. No. 53, 7¶19] ("The Plan Agent does not dispute that Movants have the right to a jury trial as to the Plan Agent's fraudulent transfer claims under *Granfinanciera*."). Under these circumstances, the sixth factor weighs heavily in favor of withdrawal of the reference.

## V. CONCLUSION

The undersigned bankruptcy judge believes that three of the six of the *Holland America* factors favor withdrawal of the reference, and the other three factors work against withdrawal. However, this Court gives more weight to the sixth factor than to any one of the other factors because of the importance of the right to a jury trial. *See Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 205 (S.D. Tex. 2008) (adopting the report and recommendation of the bankruptcy court, which held that because the defendant had demanded a jury trial—to which the defendant was entitled—the reference must be withdrawn). Under these circumstances, the undersigned judge believes that cause exists under 28 U.S.C. § 157(d), and therefore recommends that the District Court withdraw the reference of the Adversary Proceeding.

Although this Court recommends withdrawal of the reference, the Plan Agent gave credible, uncontroverted, and convincing testimony that the undersigned judge should handle all pretrial matters. While the Defendants oppose the Plan Agent's position, the undersigned judge believes that the Plan Agent's position is more compelling. Therefore, the undersigned judge recommends that the District Court, if it withdraws the reference, then refer the Adversary Proceeding back to the undersigned judge for adjudication of all pretrial matters. *See Levine*, 400 B.R. at 207 ("The right to a jury trial does not preclude a bankruptcy court from resolving pre-trial dispositive motions. A right to a jury trial does not arise until jury issues are presented."). Indeed, the undersigned judge has already reviewed the numerous motions to dismiss, and responses thereto, and is now ready to hold hearings on these motions and thereafter issue timely rulings.

Signed on this 6th day of January, 2016

*[signature]*

Jeff Bohm
United States Bankruptcy Judge