## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **BROWN MEDICAL CENTER, INC.,** | § | **CASE NO. 13-36405** |
| | § | |
| **Debtor.** | § | **Chapter 11** |
| **ELIZABETH M. GUFFY,** | § | |
| **PLAN AGENT,** | § | |
| **Plaintiff.** | § | |
| | § | **Adv. No. 15- 3228** |
| **vs.** | § | |
| | § | |
| **DICK DEGUERIN, DEGUERIN** | § | |
| **DICKSON HENNESSY & WARD,** | § | |
| **DEGUERIN & DICKSON, CATHERINE** | § | |
| **BAEN, BRIAN WICE, KATHERINE** | § | |
| **SCARDINO, MORITZ & ASSOCIATES,** | § | |
| **INC., CATHY E. BENNETT &** | § | |
| **ASSOCIATES, INC., FCS PHOTOS,** | § | |
| **CERTIFIED APPRAISERS, INC. and** | § | |
| **JOHN DOE** | § | |
| **Defendants.** | § | |

## PLAN AGENT'S FIRST AMENDED COMPLAINT

Elizabeth M. Guffy, the Plan Agent (the "Plan Agent") under the confirmed chapter 11

plan of liquidation (the "Plan") of Brown Medical Center, Inc. ("BMC" or "Debtor"), files this

First Amended Complaint (the "Amended Complaint") against Dick DeGuerin, DeGuerin

Dickson Hennessy & Ward, DeGuerin & Dickson, Catherine Baen, Brian Wice, Katherine

Scardino, Moritz & Associates, Inc., Cathy E. Bennett & Associates, Inc., Certified Appraisers,

Inc., John Doe, and FCS Photos (collectively, the "Defendants").

## PARTIES

1.      The Plan Agent may be served in this adversary proceeding through her counsel.

2.      Dick DeGuerin ("DeGuerin") is an individual that may be served by first class mail at his regular place of business, 1018 Preston Avenue, 7th Floor, Houston, Texas 77002 pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(1).

3.      DeGuerin Dickson Hennessy & Ward ("DDHW") is a partnership in the State of Texas that may be served by first class mail at its principal place of business, 1018 Preston Avenue, 7th Floor, Houston, Texas 77002 through its partner, founder and agent, Dick DeGuerin pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3).

4.      DeGuerin & Dickson ("D&D") is a partnership in the State of Texas that may be served by first class mail at 1018 Preston Avenue, 7th Floor, Houston, Texas 77002 through DeGuerin & Dickson's partner, founder and agent, Dick DeGuerin pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3).

5.      Catherine Baen ("Baen") is an individual that may be served by first class mail at her regular place of business, 1018 Preston Avenue, 7th Floor, Houston, Texas 77002 pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(1).

6.      DeGuerin, DDHW, D&D and Baen are collectively referred to throughout this Amended Complaint as DeGuerin Defendants.

7.      Brian Wice ("Wice") is an individual that may be served by first class mail at his regular place of business, 440 Louisiana St., Suite 900, Houston, Texas 77002 pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(1) or personally served wherever he may be found.

2

8.      Katherine Scardino ("Scardino") is an individual that may be served by first class mail at her regular place of business, 3730 Kirby Dr., Suite 1120, Houston, Texas 77098 pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(1).

9.      Wice and Scardino are collectively referred to throughout this Amended Complaint as the Attorney Defendants.

10.     Moritz & Associates, Inc. ("Moritz") is a corporation in the State of Texas that may be served by first class mail at 710 N. Post Oak Rd., Suite 450, Houston, Texas 77024 through Moritz's registered agent John A. Moritz pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3).

11.     Cathy E. Bennett & Associates, Inc. ("Bennett") is a corporation in the State of Texas that may be served by first class mail at 2215 Ave L, Galveston, Texas 77550 through Bennett's registered agent Robert B. Hirschhorn pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3).

12.     Certified Appraisers, Inc. ("Appraisers") is a Texas corporation that may be served by first class mail through its registered agent for service of process Jeffrey Jones at 10500 Northwest Frwy, Ste. 200, Houston, Texas 77092 pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3).

13.     FCS Photos ("FCS") is Texas business in Harris County, Texas.

14.     John Doe is an individual residing in Harris County, Texas and who has his principal places of business in Harris County, Texas.  Upon information and belief, he operates FCS Photos.

15.     Moritz, Bennett, Appraisers, FCS, and John Doe are collectively referred to throughout this Amended Complaint as the Vendor Defendants.

3

5122496v1

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Relief is sought pursuant to 11 U.S.C. §§ 544, 548, 550 and other applicable law.

17. This adversary is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O). The Plan Agent consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

18. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## SUMMARY OF THE PLAN AGENT'S COMPLAINT

19. Pursuant to 11 U.S.C. §§ 544, 548 and 550 and applicable state law, the Plan Agent seeks to avoid and recover certain payments made to or for the benefit of the Defendants by BMC related to representation of Michael Brown in connection with criminal and other proceedings against or involving Michael Brown. Further, the Plan Agent seeks to recover her attorneys' fees, costs and interest in accordance with applicable law.

## STATEMENT OF RELEVANT FACTS

### The Criminal Proceedings

20. Michael Brown had an attorney-client relationship with the DeGuerin Defendants and the Attorney Defendants throughout 2011 and 2012 relating to Michael Brown's consistent criminal conduct (the "Criminal Proceedings").

21. For example, throughout 2011 and 2012, the DeGuerin Defendants, with the assistance of some or all of the Attorney Defendants, represented Michael Brown individually in a criminal case, *State of Texas v. Michael G. Brown*, Harris County, Texas (the "Assault Case") after allegations were made that Michael Brown assaulted his fourth wife, Rachel Brown.

4

5122496v1

22.     In the fall of 2011, Michael Brown also retained the DeGuerin Defendants and at least some of the Attorney Defendants after authorities found a marijuana field on Michael Brown's property (the "Marijuana Allegations").

23.     BMC never had an attorney-client relationship with the DeGeurin Defendants or the Attorney Defendants.

24.     According to the DeGuerin Defendants and on information and belief, the Vendor Defendants also rendered services involving Michael Brown in connection with the Criminal Proceeds or otherwise. BMC did not benefit from the services of the Vendor Defendants.

***BMC's Insolvency***

25.     During 2010, BMC faced litigation from several employees and affiliated physicians, alleging breach of contract and fraud, among other actions. In February 2010, Dr. Kevin J. Renfree, M.D. filed suit against BMC as a *qui tam* action under the False Claims Act ("FCA"). In his suit, Dr. Renfree alleged BMC submitted or caused the submission of false or fraudulent claims to the Medicare Program, the Texas Medicaid Program, and the Arizona Medicaid Program for medical procedures it did not perform and by overbilling the government for procedures it did perform. Eventually, the United States government intervened in the matter. The FCA provides for the recovery by the United States government of reimbursements paid for services improperly billed, treble damages, and mandatory fines and penalties in the amount of $5,500 and $11,000 per claim. The *qui tam* lawsuit alleged as many as 8,562 instances of false billing. As such, the *qui tam* claims constituted a significant liability of BMC as early as 2010.

26.     Additionally, on January 7, 2011, Rachael Brown initiated divorce proceedings against Michael Brown. The divorce involved protracted, expensive litigation. The divorce had a profound impact on BMC's financial condition because Rachel Brown's attorneys' fees—

5

amounting to millions of dollars—were paid by BMC. These non-operational cash expenditures, coupled with BMC's continued funding of Michael Brown's criminal defense costs, eroded BMC's cash position, resulted in BMC incurring unnecessary debt obligations and crippled the company's liquidity and access to necessary capital.

27.     By March 2011, BMC was suffering from "a substantial decline in business" and faced significant liabilities resulting from (i) pending litigation; (ii) guarantees of significant affiliate obligations; and (iii) claims asserted by certain affiliates related to funding BMC's working capital shortfalls. The litigation initiated by BMC employees and affiliated physicians represented additional risks to the future operational stability of the entity, further impairing its value.

28.     These mounting liabilities and non-operational expenses, along with the substantial decline in business, resulted in (i) BMC's liabilities exceeding the fair value of its assets no later than March 2011; and (ii) BMC knowingly engaging in continued business operations with woefully insufficient capital and incurring legitimate debts beyond its ability to pay as early as March 2011 (the "Insolvency Date").

### The Transfers

29.     After the Insolvency Date, BMC made at least the following transfers of the Debtor's property to or for the benefit of the DeGeurin Defendants relating to the DeGuerin Defendants' representation of Michael Brown personally:

| Date | Amount |
| --- | --- |
| April 29, 2011 | $500,000.00 |
| June 14, 2011 | $250,000.00 |
| August 4, 2011 | $200,000.00 |

6

| September 9, 2011 | $200,000.00 |
| September 15, 2011 | $250,000.00 |
| November 3, 2011 | $300,000.00 |
| November 30, 2011 | $55,000.00 |
| November 30, 2011 | $65,000.00 |
| December 8, 2011 | $17,553.00 |
| December 8, 2011 | $23,316.00 |
| December 9, 2011 | $15,000.00 |
| Total | $1,875,869.00 |

30.     According to the DeGeurin Defendants, after the Insolvency Date, BMC made the transfers identified on the attached **Exhibit A** of the Debtor's property to or for the benefit of Baen, the Attorney Defendants, and the Vendor Defendants relating to services for Michael Brown personally or otherwise.

31.     The transfers in paragraphs 30 through 31, as well as any other transfers from BMC to or for the benefit of Defendants (as the initial transferee, the beneficiary and/or the immediate or mediate transferee) are collectively referred to as the "Transfers."

32.     BMC had no independent legal obligation to make and received no benefit for the Transfers.

***The Bankruptcy Cases***

33.     On January 23, 2013, Michael Brown filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Florida (Case No. 13-11484-RAM). That case was later transferred to the United States Bankruptcy Court for the Southern District of Texas (Case No. 13-35892).

7

5122496v1

34. On October 15, 2013 (the "Petition Date"), Ronald Sommers, chapter 11 trustee for Michael Brown, filed a voluntary petition for relief on behalf of BMC under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (Case No. 13-36405). On October 24, 2013, the bankruptcy court entered an order appointing Elizabeth M. Guffy as chapter 11 trustee of BMC.

35. On October 1, 2014, this Court confirmed a plan of liquidation in this case pursuant to which Ms. Guffy was appointed as the Plan Agent.

## CLAIMS

### Fraudulent Transfers Under 11 U.S.C. § 548

36. The Plan Agent incorporates the allegations above.

37. The Transfers and any agreement by the Debtor to make and/or allow such Transfers within two years of the Petition Date (collectively, the "Two-Year Transfers"), are avoidable as fraudulent transfers under 11 U.S.C. § 548. Specifically, the Debtor received less than reasonably equivalent value for the Two-Year Transfers because Defendants provided no services for the benefit of BMC with regard to the Criminal Proceedings or otherwise, and all value provided by Defendants was specifically for the benefit of Michael Brown. Moreover, BMC had no legal obligation to make the Two-Year Transfers. Finally, on the date of the Two-Year Transfers, the Debtor (i) was insolvent, or became insolvent as a result of the Two-Year Transfers; (ii) was engaged or was about to engage in business in which its property after the Two-Year Transfers was unreasonably small capital; and/or (iii) intended to incur or believed it would incur debts that it would be unable to repay.

38. Under 11 U.S.C. § 550(a), the Plan Agent can recover the payments or the value of the payments from "the initial transferee of such transfer or the entity for whose benefit such

8

transfer was made" or "any immediate or mediate transferee of such initial transfer." Defendants were the initial transferee, the beneficiary and/or the immediate or mediate transferee of the Two-Year Transfers.

39.     The Plan Agent requests that the Court enter a judgment avoiding the Two-Year Transfers and awarding the Plan Agent a money judgment in the amount of the Two-Year Transfers, plus pre- and post-judgment interest.

### Fraudulent Transfers Under Texas Law

40.     The Plan Agent incorporates the allegations above.

41.     The Transfers and any agreement by the Debtor to make and/or allow such Transfers within four years of the Petition Date (the "Four-Year Transfers") were made in violation of Chapter 24 of the Texas Business and Commerce Code. Specifically, the Four-Year Transfers were made without the Debtor receiving reasonably equivalent value in exchange for the Four-Year Transfers and the Debtor was insolvent at the time of the Four-Year Transfers or the Debtor became insolvent as a result of the Four-Year Transfers. Defendants provided no services for the benefit of BMC with regard to the Criminal Proceedings or otherwise, and all value provided by Defendants was specifically for the benefit of Michael Brown. Moreover, BMC had no legal obligation to make the Four-Year Transfers. A creditor exists whose claim arose before the occurrence of the Four-Year Transfers for whom the Plan Agent can act. TEX. BUS. & COM. CODE § 24.006(a).

42.     The Four-Year Transfers were made for less than reasonably equivalent consideration and the Debtor (i) was engaged in business for which the remaining assets were unreasonably small in relation to the Debtor's business; or (ii) reasonably should have known that the Debtor was incurring debts beyond its ability to repay them. TEX. BUS. & COM. CODE §

9

24.005(a)(2). A creditor exists whose claim arose before or within a reasonable time after the occurrence of the Four-Year Transfers for whom the Plan Agent can act. TEX. BUS. & COM. CODE § 24.005.

43. The Plan Agent seeks money damages against Defendants pursuant to TEX. BUS. & COM. CODE § 24.008.

44. Defendants were the initial transferees, immediate transferees or mediate transferees of all of the Transfers.

## LIABILITY OF PARTNERS AND PARTNERSHIPS

45. Pursuant to § 152.304 of the Texas Business and Organizations Code all partners are jointly and severally liable for obligations of a partnership. An action may be brought against a partnership and any or all of the partners in the same action or in separate actions. TEX. BUS. ORG. CODE § 152.305. As a result, DeGuerin, DDHW, and D&D are jointly and severally liable for the Transfers.

## ATTORNEY'S FEES

46. The Plan Agent requests an award of her reasonable fees and costs pursuant to the TEX. BUS. & COM. CODE § 24.013 and any additional applicable law.

## PRE- AND POST-JUDGMENT INTEREST

47. The Plan Agent seeks pre-judgment interest on the value of the Transfers through the date of judgment. The Plan Agent seeks post-judgment interest on all money damages awarded hereunder from the date of judgment until paid at the prevailing federal judgment rate.

## PRAYER

Accordingly, the Plan Agent requests the Court enter judgment as set forth above and grant such other relief as is just.

10

5122496v1

**Dated: October 8, 2015.**

Respectfully submitted,

**Porter Hedges LLP**

By:     /s/ Joshua W. Wolfshohl
        Joshua W. Wolfshohl
        State Bar No. 24038592
        Amy K. Wolfshohl
        State Bar No. 24055880
        Stephanie L. Holcombe
        State Bar No. 24069939
        1000 Main Street, 36th Floor
        Houston, Texas 77002
        (713) 226-6000
        (713) 228-1331 (fax)
        jwolfshohl@porterhedges.com

        **Counsel for the Plan Agent**

11

5122496v1

| Date | Name | Memo | Amount |
|------|------|------|--------|
| 9/13/2011 | Brian Wice, Attorney at Law | attorney's fees | 14,000.00 |
| 9/28/2011 | Brian Wice, Attorney at Law | attorney's fees  35,500.00 | 35,500.00 |
| 09/07/2011 | Catherine L. Baen | attorney's fees (focus group prep & taping) | 6,000.00 |
| 09128/2011 | Catherine L. Baen | attorney's fees  49,200.00 | 49,200.00 |
| 11/16/2011 | Catherine L. Baen | attorney's fees | 13,400.00 |
| 07/11/2011 | Cathy E. Bennett & Associates, Inc. | jury research | 40,000.00 |
| 10/4/2011 | Cathy E. Bennett & Associates, Inc. | jury and trial consultation  29,408.78 | 29,408.78 |
| 05/23/2011 | Certified Appraisers, Inc. | retainer on appraisal  69,200.00 | 69,200.00 |
| 12/1/2011 | FCS Photos | video services | 55,000.00 |
| 1/11/2012 | FCS Photos | video services | 23,792.08 |
| 3/16/2011 | Katherine Scardino, Attorney at Law | additional attorney's fees | 49,678.32 |
| 4/14/2011 | Katherine Scardino, Attorney at Law | additional attorney's fees | 20,283.96 |
| 5/17/2011 | Katherine Scardino, Attorney at Law | additional attorney's fees | 29,206.25 |
| 5/17/2011 | Katherine Scardino, Attorney at Law | expense reimbursement to K. Scardino | 802.32 |
| 07/15/2011 | Katherine Scardino, Attorney at Law | additional attorney's fees | 21,962.50 |
| 7/15/2011 | Katherine Scardino, Attorney at Law | expense reimbursement to K. Scardino | 149.19 |
| 09/07/2011 | Katherine Scardino, Attorney at Law | attorney's fees for 7-15-11 to 8-31-11 | 20,706.25 |
| 9/7/2011 | Katherine Scardino, Attorney at Law | expense reimbursement to K. Scardino | 1,679.41 |
| 12/14/2011 | Katherine Scardino, Attorney at Law | attorney's fees | 23,112.50 |
| 12/14/2011 | Katherine Scardino, Attorney at Law | expense reimbursement to K. Scardino | 203.12 |
| 3/1/2011 | Moritz & Associates, Inc. | investigation | 20,000.00 |
| 4/15/2011 | Moritz & Associates, Inc. | investigation | 25,409.82 |
| 5/4/2011 | Moritz & Associates, Inc. | investigation | 9,799.66 |
| 5/5/2011 | Moritz & Associates, Inc. | investigation - additional retainer | 25,000.00 |
| 7/21/2011 | Moritz & Associates, Inc. | investigation - additional retainer | 25,000.00 |
| 8/17/2011 | Moritz & Associates, Inc. | investigation/additional retainer per 8/12/11 in | 25,000.00 |
| | | | 633,494.16 |



**Exhibit**
**A**