IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: § | | |
| BROWN MEDICAL CENTER, INC., § | | |
| Debtor. § | **CIVIL ACTION NO. 16-0043** | |
| § | | |
| ------------------------------------------------- § | | |
| § | | |
| ELIZABETH M. GUFFY, Plan Agent, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Bankruptcy Adversary No. 15-3228 | |
| § | | |
| DICK DEGUERIN, *et al.*, § | | |
| Defendants. § | | |

# MEMORANDUM AND ORDER

Elizabeth Guffy, the Plan Agent under the confirmed Chapter 11 Plan of Liquidation in the Brown Medical Center, Inc. bankruptcy, filed this adversary proceeding seeking to avoid certain attorney's fee and related litigation expense payments as fraudulent transfers. The case is now before the Court on the Plan Agent's Motion to Exclude the Opinions and Testimony of James M. McCormack ("Motion to Exclude") [Doc. # 90], to which Defendant Dick DeGuerin filed a Response [Doc. # 131], and the Plan Agent filed a Reply [Doc. # 133]. The Court has

reviewed the record and the applicable legal authorities. Based on this review, the Court **denies** the Motion to Exclude.[1]

## I. BACKGROUND

Michael Brown, the owner of 100% of the shares of Debtor Brown Medical Center, Inc. ("BMC"), was represented by attorneys DeGuerin and others in connection with criminal cases against him, including prosecutions for assault and for having a marijuana field on his property. Plaintiff alleges that BMC transferred funds to DeGuerin after it became insolvent. Plaintiff alleges that BMC had no independent legal obligation to make the transfers, which were for Brown's sole benefit.

In January 2013, Brown filed a voluntary Chapter 11 bankruptcy petition. On October 15, 2013, Brown's Chapter 11 Trustee filed a voluntary Chapter 11 bankruptcy petition on behalf of BMC. The Bankruptcy Court appointed Plaintiff Elizabeth Guffy as the Chapter 11 Trustee for BMC. On October 1, 2014, the Bankruptcy Court confirmed a plan of liquidation in BMC's bankruptcy case and appointed Guffy as the Plan Agent.

---

[1] Should there be a trial in this case, the Court as a general rule does not admit an expert's written report into evidence at trial. Instead, the witness presents his opinions through testimony subject to cross-examination. Additionally, in the jury charge, the Court's general practice is to refer to the witness as one allowed to offer opinions, not as an "expert."

Plaintiff filed this Adversary Proceeding, asserting fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(B) and under TUFTA. *See* First Amended Complaint [Doc. # 16]. By Memorandum and Order [Doc. # 15] entered February 3, 2016, this Court withdrew the reference of this Adversary Proceeding and retained the case on its own docket.

DeGuerin has designated James M. McCormack as an expert witness in this case. McCormack has issued a written report, a rebuttal report, and he has been deposed. McCormack opines that there was an attorney-client relationship between DeGuerin and BMC, and that funds provided to DeGuerin and maintained in DeGuerin's IOLTA[2] Trust Account remained the property of BMC. The Plan Agent filed her Motion to Exclude, which has been fully briefed and is now ripe for decision.

## II.   LEGAL STANDARD FOR EXPERT OPINIONS

Witnesses who are qualified by "knowledge, skill, experience, training or education" may present opinion testimony to the jury. FED. R. EVID. 702; *see, e.g., Whole Woman's Health v. Hellerstedt*, __ U.S. __, 136 S. Ct. 2292, 2316 (2016); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) *(en banc)*; *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). To be admissible, an expert's proffered

---

[2]IOLTA, or "Interest on Lawyers Trust Accounts," Trust Accounts are accounts in which a lawyer deposits and holds clients' funds.

testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993); *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016).

The expert testimony must be relevant and the expert's proposed opinion must be one that would assist the trier of fact to understand or decide a fact in issue. *See Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015); *Bocanegra v. Vicar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 591-92). "A party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Huss*, 571 F.3d at 452 (citing *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir. 2007)); *see also Carlson*, 822 F.3d at 199.

"Reliability" requires that the proponent of the expert testimony must present some objective, independent validation of the expert's methodology. *See Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013). The objective of the Court's gatekeeper role is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

The Court's gatekeeping role is no substitute, however, for the adversarial process. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596; *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 852 (5th Cir. 2015).

## III. ANALYSIS

### A. McCormack's Qualifications

McCormack offers opinions in this case regarding (1) whether funds from Brown or BMC that were held in DeGuerin's IOLTA Trust Account were "transfers" to DeGuerin, or whether they remained the property of the client, and (2) whether there existed an attorney-client relationship between DeGuerin and BMC. McCormack is clearly qualified to offer opinions on these two fact issues. He received a Doctor of Jurisprudence degree from the University of Texas, and was licenced to practice law in 1984. He has been practicing law continuously since that time. He was General Counsel and Chief Disciplinary Counsel for the State Bar of Texas from 1991 to 1996. From 1998 to 2004, he served as a member of the Texas

State Bar's Disciplinary Rules of Professional Conduct Committee. He was Chairman of the Texas Center for Legal Ethics and Professionalism from 2007 to 2008. In 2015, McCormack was appointed to the State Bar of Texas Professional Ethics Committee. He has been widely published and has served as a speaker at many ethics-related conferences. He has frequently provided expert testimony by deposition, at hearings, in arbitrations, and in trial.

Plaintiff argues that McCormack is not qualified to provide opinion testimony in this case because he has no expertise in the area of "fraudulent transfers." Whether or not that argument is correct, McCormack is not offering opinions on whether DeGuerin received fraudulent transfers. Instead, as stated above, McCormack is offering opinion testimony on two discrete factual issues on which he is clearly qualified.

### B. Opinion Regarding Funds in Trust Account

McCormack opines that approximately $1.8 million from Brown or BMC that DeGuerin held in his IOLTA Trust Account remained the property of Brown or BMC until such time as they were earned or disbursed from the Trust Account. He opines that DeGuerin did not "own" the funds in the Trust Account until they were earned or otherwise eligible for disbursement. In support of his opinion, McCormack cites Rule 1.14 of the Texas Disciplinary Rules of Professional Conduct and the Comments

thereto. Much like an attorney who provides expert testimony regarding whether requested attorney's fees are "reasonable and necessary," McCormack based his opinion on his review of evidence in the record in light of his knowledge and experience.

Plaintiff argues that expert testimony is unnecessary because the funds paid to DeGuerin were paid as a flat fee retainer over which DeGuerin had "dominion and control" and over which BMC had no interest after they were paid. Under Texas law, retainer agreements "fall into three general categories: (1) classic retainers; (2) security retainers; and (3) advance payment retainers." *Barron v. Countryman*, 432 F.3d 590, 595 (5th Cir. 2005). A classic retainer involves fees paid to the attorney as consideration for his employment, not as compensation for services rendered, and becomes the property of the attorney upon payment. *See id.* A security retainer is paid to the attorney for prospective services, and the client retains an interest in the funds until services are actually rendered. *See id.* Until the services are rendered and the fees are earned, the attorney holds the funds for the client. *See id.* at 595-96. An advance payment or flat fee retainer involves fees that the client pays to the attorney as compensation for services to be rendered in the future, but the client relinquishes all interest in the funds at the time of payment. *See id.* at 596.

In support of her argument that BMC paid DeGuerin a flat fee retainer, Plaintiff cites to a February 2, 2009 representation letter signed by DeGuerin and Brown. In the letter, DeGuerin referenced a divorce and custody dispute between Brown and a former wife, Darlina Barone. DeGuerin stated that he would represent Brown "for a total contract fee" of $100,000, and would require a $25,000 deposit against anticipate expenses. DeGuerin further stated in the letter that the fee is "a non-refundable contract fee" that is considered "earned as of the time I agree to represent you." *See* Representation Letter, Exh. 1 to Motion to Exclude. Whether the funds were actually a flat fee retainer is a fact issue in this case. McCormack states in his rebuttal report that attorneys often mischaracterize retainer payments and, similarly, often treat a retainer differently than how it is originally characterized. In this case, DeGuerin held the funds in his IOLTA Trust Account, which could indicate that the funds were paid as a security retainer. McCormack's opinions may assist the trier of fact to resolve this fact issue.

Fundamentally, Plaintiff's challenge is to the accuracy of McCormack's opinion that the funds in the Trust Account were not "owned" by DeGuerin when they were delivered to him but, instead, remained the property of Brown and/or BMC until earned or otherwise disbursed. Should there be a trial in this case, Plaintiff will have the opportunity at that time to cross-examine McCormack fully, and will be allowed

to present admissible evidence to challenge his opinion regarding the funds in the IOLTA Trust Account. McCormack's opinion is based on his review of evidence in the record in light of his experience and the Texas Disciplinary Rules of Professional Conduct. It is relevant, sufficiently reliable, and likely to assist the trier of fact. His opinion does not invade the province of the judge and jury because it is not a pure legal conclusion and does not instruct the jury how to decide the ultimate question before it regarding Plaintiff's fraudulent transfer claims. As a result, the Motion to Exclude this opinion is denied.

### C. Opinion Regarding Attorney-Client Relationship

McCormack offers the opinion that DeGuerin and BMC had an attorney-client relationship. Under Texas law, an attorney-client relationship "may arise by implication from the parties' actions." *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 2000). Generally, expert testimony is appropriate to establish the existence of an attorney-client relationship. *See Brown v. Slenker*, 220 F.3d 411, 421-22 (5th Cir. 2000) (legal malpractice). Unless there is no possibility that reasonable minds could differ, the issue is a question of fact to be decided by the finder of fact. *See id.*

Plaintiff argues that McCormack failed to apply a reliable methodology to reach his opinion regarding the attorney-client relationship. The record indicates, however,

that he reviewed evidence in the record and, based on his extensive knowledge and experience, opined that an attorney-client relationship existed between DeGuerin and BMC. For example, one of the documents that McCormack reviewed was an August 4, 2011 letter from BMC's Chief Financial Officer to DeGuerin. In that letter, BMC expressed concern for BMC's employees if Brown were convicted, and stated that he trusted DeGuerin to do everything he could to protect Brown *and his companies*. Based on his knowledge and experience, McCormack states this letter supports the existence of an attorney-client relationship between DeGuerin and BMC.

The issue regarding the existence of an attorney-client relationship is one on which expert testimony is proper, and the methodology and reasoning used by McCormack is a reliable means to evaluate that issue. Plaintiff disagrees with McCormack's opinion, particularly because there is no written contract between DeGuerin and BMC. This disagreement, however, goes to the proper weight to be given McCormack's opinion rather than to its admissibility. Should there be a trial, Plaintiff can cross-examine McCormack, and can present evidence from which a jury could decide to reject McCormack's opinion. The Court finds at this stage that McCormack's opinion regarding the existence of an attorney-client relationship between DeGuerin and BMC is relevant, reliable, and likely to assist the trier of fact. As a result, the request to exclude this testimony is denied.

## IV. CONCLUSION AND ORDER

McCormack is qualified to provide the opinions he offers, and his expert opinions and testimony satisfy the requirements of the Federal Rules of Civil Procedure and relevant legal authorities. As a result, it is hereby

**ORDERED** that the Motion to Exclude [Doc. # 90] is **DENIED**.

SIGNED at Houston, Texas, this 19th of **June, 2017**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE